Todd J. GRAUBERGER, Claimant–Respondent,

v.

ATLAS VAN LINES, INC., Employer–Appellant.

Nos. SD 32139, SD 32154.

Missouri Court of Appeals, Southern District, Division Two.

March 4, 2013.

Industrial Relations Commission ("the Commission") granting benefits for permanent total disability to Todd J. Grauberger ("Claimant"). Employer argues the Commission erred in finding Claimant was permanently and totally disabled. We disagree and affirm.

### Standard of Review

Review of the Commission's award in a workers' compensation case is governed by section 287.495 [1] as interpreted in *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003). *See Whiteley v. City of Poplar Bluff*, 350 S.W.3d 70, 78 (Mo.App. S.D.2011). Under those authorities, we

> may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the [C]omission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the [C]omission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1. "A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton*, 121 S.W.3d at 222–23. Nevertheless, this Court still "defers to the Commission on issues involving the credibility of witnesses

Michael J. Schaller, Todd D. Hilliker, St. Louis, MO, for appellant.

David A. Childers, Springfield, MO, for respondent.

MARY W. SHEFFIELD, Judge.

Atlas Van Lines, Inc. ("Employer") appeals the final award of the Labor and

---

1. Unless otherwise indicated, all statutory references are to RSMo (2000). Because Claimant's injury occurred before the effective date of the 2005 amendments to the Workers' Compensation Law, we apply the pre–2005 statute. *See Pruett v. Federal Mogul Corp.*, 365 S.W.3d 296, 303–04 n. 4 (Mo.App. S.D. 2012). Under that version of the statute, "[a]ny doubt as to the right of an employee to compensation should be resolved in favor of the injured employee." *Molder v. Missouri State Treasurer*, 342 S.W.3d 406, 409–10 n. 2 (Mo.App. W.D.2011) (quoting *Angus v. Second Injury Fund*, 328 S.W.3d 294, 297–98 (Mo. App. W.D.2010)).

and the weight to be given to their testimony." *Underwood v. High Road Indus., LLC*, 369 S.W.3d 59, 66 (Mo.App. S.D. 2012). "We will not substitute our judgment on issues of fact where the Commission was within its powers, even if we would arrive at a different initial conclusion." *Id.* (quoting *Molder v. Missouri State Treasurer*, 342 S.W.3d 406, 409 (Mo. App. W.D.2011)).

### Factual and Procedural Background

Claimant spent his entire working life in the moving business. His position involved packing the customer's belongings, loading the trailer, driving the trailer to the new location, and then unpacking the customer's belongings. The job frequently involved heavy lifting.

On November 19, 2001, Claimant was bending over to put padding on a nightstand when he felt an immediate pain in his lower back. X-rays revealed a herniated disc, and surgery was performed in December 2001. Although Claimant's condition improved some after the surgery, his attempts to return to work failed.

Claimant sought workers' compensation benefits for permanent total disability. A hearing regarding that claim was held on January 14, 2011. Claimant was the only live witness. Claimant testified his birth date was October 17, 1961. He described the injury and the treatment he received for it. Claimant explained he experienced some improvement after his surgery, but continued to suffer from symptoms including substantial pain and numbness in his legs. Claimant testified his condition had gotten worse by the time of the hearing. He had knots in his back and a "numbing, burning sensation" in his leg. The knots in his back were continuous. Claimant also walked with a limp. Claimant stated he did not believe there was any job he was capable of doing because he had to rest two or three times a day to control his pain.

The remainder of the evidence at the hearing consisted of deposition testimony and reports from various experts. Doctor Garth Russell ("Dr. Russell"), an orthopedic surgeon, examined Claimant in 2008. Dr. Russell diagnosed Claimant with a herniated disc at L4–5, chronic muscle spasm, radiculopathy, and chronic reactive depression. During his deposition, Dr. Russell testified Claimant's symptoms were consistent with a failed back. A person with a failed back is a person for whom neither conservative treatment nor surgery provided relief from symptoms. Dr. Russell opined that based on Claimant's capabilities, Claimant was unemployable in any position for which he would be qualified. Furthermore, he did not believe Claimant was a candidate for rehabilitation.

Doctor Shane Bennoch ("Dr. Bennoch"), a physician whose business provided independent medical evaluations, examined Claimant in 2005. In addition to his medical training, Dr. Bennoch has also had training to "evaluate individuals to determine their abilities and restrictions they may have in regard to future employment." In his report, Dr. Bennoch summarized the medical records corresponding to Claimant's treatment. He testified Claimant had failed back syndrome and would have "continued persistent problems with his low back." While Claimant "may be capable of doing certain tasks," Dr. Bennoch did not believe Claimant would be able to do so "on a repetitive basis."

Phillip Eldred ("Mr. Eldred"), a certified vocational rehabilitation counselor, also met with Claimant in 2005. Mr. Eldred's opinion was that Claimant was unemployable in the open labor market because of his back injury. In support of his opinion, Mr. Eldred noted Claimant's functional limitations, limited education, and poor test results. While Claimant had a high school

diploma, testing revealed his reading skills were at an eighth grade level and his arithmetic skills were at a sixth grade level. Mr. Eldred testified Claimant's constant pain would also make finding and maintaining employment difficult. Mr. Eldred said Claimant's physical limitations could be accommodated only in a managerial-type job requiring high education. Mr. Eldred stated Claimant "doesn't have the aptitude to be retrained, given his age and his educational experience and the . . . results from his tests."

Bob Hammond ("Mr. Hammond"), another vocational consultant, reviewed Claimant's records and provided a report for Employer. In addition to the records made by Claimant's numerous physicians, Mr. Hammond reviewed the results of a functional capacity evaluation which showed Movant could return to work at the medium level. Mr. Hammond would have preferred to have met with Claimant but was unable to do so. He testified there were many factory jobs Claimant could do. He also believed that at the medium work level, Claimant could go back to work as a truck driver.

Doctor Edwin Wolfgram ("Dr. Wolfgram") was a psychiatrist who examined Claimant in 2010. He diagnosed Claimant with an adjustment disorder, anxiety and depression, and a pain disorder as a result of the 2001 injury. Although he did not do an intellectual study of Claimant or use any questionnaires in his evaluation of Claimant, Dr. Wolfgram believed Claimant was "a bright gentleman" who could function in an administrative position in the moving industry. Dr. Wolfgram testified Claimant would require some rehabilitation but would be capable of employment.

The administrative law judge ("ALJ") found the opinions of Dr. Russell, Dr. Bennoch, and Mr. Eldred to be more credible than those of the other experts. The ALJ concluded Claimant was permanently and totally disabled as a result of his failed back, stating "[a]lthough [Claimant] may functionally be able to perform work in the light to medium category, it is clear that based upon his chronic pain and failed back [C]laimant would be unable to perform work on a repetitive or constant basis in the work force at large." The Commission affirmed and adopted the findings of the ALJ. Employer appeals.

### Discussion

Before we address the merits of this appeal, we must address the problems of interpretation and preservation presented by the organization of Employer's brief. If we read the brief the way Employer has organized it, as raising two points, neither of Employer's points is preserved for review because the points are not supported by citation to relevant authority. When the two points are read together, however, it is clear that Employer is raising the single argument that the Commission's award was not supported by sufficient competent evidence.

■ The appellant has the duty to support his points on appeal with citations to authority. *See* Rule 84.04(d)(5).[2] "Ordinarily, a point of error unsupported by citation of *relevant* authority is deemed abandoned." *Higgins v. The Quaker Oats Co.*, 183 S.W.3d 264, 269 (Mo.App. W.D. 2005) (quoting *Bishop v. Bishop*, 618 S.W.2d 261, 263 (Mo.App. W.D.1981)) (emphasis in *Higgins*). Stated another way, when a party fails to support its points with citations to authority, its arguments are not preserved for review. *Michael v. Treasurer*, 334 S.W.3d 654, 662 (Mo.App. S.D.2011).

2. All rule references are to Missouri Court Rules (2012).

In Point I, Employer argues the Commission acted without or in excess of its powers and the facts as found by the Commission do not support the award, but the cases Employer cites to support that point are not relevant to the issue raised in that point because either (1) they involve a different statute; (2) they were decided by the Commission rather than an appellate court; or (3) they deal with the distinct issue of whether the Commission's award was supported by sufficient competent evidence. In Point II, Employer argues the Commission's award was not supported by sufficient competent evidence. Yet in the argument section supporting that point, Employer cites only cases relating to the standard of review. Consequently, when read in isolation from each other, neither point is supported by citations to relevant authority. Such points could be deemed abandoned. *See Higgins,* 183 S.W.3d at 269.

■ Nevertheless, "[i]t is always our preference to resolve an appeal on the merits of the case rather than to dismiss an appeal for deficiencies in the brief." *Bishop v. Metro Restoration Services, Inc.,* 209 S.W.3d 43, 48 (Mo.App. S.D. 2006). So long as the deficiencies in the brief do not impede disposition of the claims, we will exercise our discretion to review the claims on the merits. *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 647 (Mo. banc 1997). "A brief impedes disposition on the merits where it is so deficient that it fails to give notice to this Court and to the other parties as to the issue presented on appeal." *Id.*

■ We believe we can discern the nature of the claim presented for two reasons. First, the authority from Point I actually relates to the legal claim made in Point II. Second, "whether a particular employee is permanently and totally disabled is a factual, not a legal, question." *Molder,* 342 S.W.3d at 409. For these reasons, we believe the brief is properly read as raising the single claim that the Commission's award is not supported by competent and substantial evidence. As the briefing deficiencies do not impede our ability to discern the nature of Employer's claim, we exercise our discretion to review the claim on the merits. To the extent that Employer is raising additional claims, those claims are not preserved because they are not supported by citation to authority. *See Michael,* 334 S.W.3d at 662. Consequently, those claims are denied.

■ Turning to the merits of the appeal, Employer presents three reasons that the Commission's award is not supported by competent and substantial evidence. First, Employer suggests the Commission erred in determining Claimant was permanently and totally disabled because Claimant was functionally able to work in the light to medium category. Next, Employer argues Dr. Bennoch's opinion was not competent and credible because Dr. Bennoch was not a specialist in the treatment of the low back and lumbo sacral spine. Finally, Employer suggests the Commission could not consider Claimant's "age, academic limitations, work history, lack of capacity for re-training, and lack of transferable skills" because such consideration would mean Claimant was not permanently and totally disabled as a result of the work injury alone. These arguments are without merit.

■ Under section 287.020, the term "total disability" is defined as the "inability to return to any employment and not merely ... inability to return to the employment in which the employee was engaged at the time of the accident." § 287.020.6.

The test for permanent total disability is whether the worker is able to compete in the open labor market. The critical question is whether, in the ordinary

course of business, any employer reasonably would be expected to hire the injured worker, given his present physical condition.

*Molder*, 342 S.W.3d at 411 (quoting *Treasurer v. Cook*, 323 S.W.3d 105, 110 (Mo. App. W.D.2010)) (citations and internal quotation marks omitted). This test "does not require that the claimant be completely inactive or inert." *Pavia v. Smitty's Supermarket*, 118 S.W.3d 228, 234 (Mo. App. S.D.2003) (quoting *Sifferman v. Sears, Roebuck and Co.*, 906 S.W.2d 823, 826 (Mo.App. S.D.1995)). Furthermore, the determination of disability is not purely a medical question: "The testimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with, or where supported by, some medical evidence." *Reiner v. Treasurer of State of Mo.*, 837 S.W.2d 363, 367 (Mo.App. E.D. 1992) (*overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 229 (Mo. banc 2003)) (quoting *Patchin v. National Super Markets, Inc.*, 738 S.W.2d 166, 167 (Mo.App. E.D.1990)).

The facts of this case are much like those in *Underwood*. In that case, the claimant suffered a back injury which caused significant ongoing pain. 369 S.W.3d at 61. Additionally, the claimant had limited intellectual ability and would be unlikely to benefit from retraining. *Id.* at 64. Under those circumstances, the appellate court found there was substantial competent evidence to support the Commission's award of permanent total disability even though there was also evidence in the record that the claimant was functionally capable of performing work in the light to medium category. *Id.* at 62, 67.

Here, the testimony of Dr. Bennoch, Mr. Eldred, and Claimant constituted sufficient competent evidence to support the award.

Claimant experienced continued low back pain and numbness in his leg. Dr. Bennoch reported chronic muscle spasms in Claimant's lower back. Mr. Eldred testified Claimant's limited education and poor test results indicated Claimant could not be retrained. He further opined Claimant was unemployable in the open labor market. Together, this evidence was competent substantial evidence to support the Commission's award.

■ Employer's argument that Claimant could work in the light to medium category simply ignores the evidence of Claimant's constant pain. While the evidence that Claimant could perform occasional work in the light to medium category might have supported a different conclusion, the testimony regarding Claimant's pain and limited prospects for retraining constituted competent substantial evidence in the record that supported the Commission's determination. We will not disturb an award merely because the evidence might also have supported a different determination. *Pavia*, 118 S.W.3d at 239.

■ Claimant's argument regarding Dr. Bennoch's qualifications is misplaced because a doctor need not be board certified for his testimony to constitute competent substantial evidence to support a workers' compensation award. *Cochran v. Industrial Fuels & Res., Inc.*, 995 S.W.2d 489, 494 (Mo.App. S.D.1999). If Employer believed Dr. Bennoch was not qualified to give an expert opinion in this case, Employer should have objected to the foundation for the admission of Dr. Bennoch's opinion. *See Hawthorne v. Lester E. Cox Med. Ctrs.*, 165 S.W.3d 587, 593–94 (Mo.App. S.D.2005); *Abbott v. Haga*, 77 S.W.3d 728, 732 (Mo.App. S.D. 2002). Employer did not do so. Dr. Bennoch was a medical doctor who had training in evaluating patients' abilities

and restrictions with respect to future employment. The lack of any additional qualifications was merely a factor the Commission could consider in determining what weight to afford Dr. Bennoch's testimony. *See Cochran,* 995 S.W.2d at 494. Claimant's argument the Commission could not consider Claimant's age and limited potential for retraining is also without merit. The question of whether a claimant is permanently and totally disabled "is not solely a medical question." *ABB Power T & D Co. v. Kempker,* 236 S.W.3d 43, 52 (Mo.App. W.D.2007) (quoting *Landers v. Chrysler Corp.,* 963 S.W.2d 275, 279 (Mo.App. E.D.1997)). In making the determination of whether any employer could reasonably be expected to hire a claimant, the finder of fact can consider evidence aside from physician testimony which bears on the claimant's suitability for a job. *Pavia,* 118 S.W.3d at 239. Here, Claimant's age and potential for retraining were factors that affected whether an employer could reasonably be expected to hire him.

In sum, there was competent substantial evidence to support the Commission's award. Employer's claim on appeal is denied.

### Decision

The Commission's final award is affirmed.

DANIEL E. SCOTT, P.J. and DON E. BURRELL, C.J., concurs.